**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ERIN B.,

                                    Plaintiff,

v.                                                                  5:21-CV-248
                                                                     (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Collins & Hasseler, PLLC                   VICTORIA H. COLLINS, ESQ.
225 State Street
Carthage, New York 13619
Attorney for plaintiff

Social Security Administration             RAMI  VANEGAS, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**MEMORANDUM-DECISION & ORDER**[1]

    Plaintiff Erin B.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("Commissioner" or "defendant")

denying her applications for disability insurance benefits and supplemental security

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

income benefits.  See Dkt. No. 1 ("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 11, 17.  For the following reasons, the Commissioner's decision is affirmed, plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.  Background[3]

### A.  Factual Background

Plaintiff was born on June 9, 1990.  See T. at 270.  She is a college graduate, who graduated high school at age 16.  See id. at 1388.  She subsequently obtained a master's degree in art education.  See id. at 75-76, 1608.  Plaintiff's employment history includes work as a cake decorator, attendant at a distillery tasting room, and elementary school art teacher.  See id. at 76-83, 328-335.  At the time of her hearing, plaintiff worked on a limited basis at the distillery, but typically no more than one five-hour shift per month.  See id. at 83.  The ALJ concluded that this limited work did not qualify as substantial gainful activity.  See id. at 27.

Plaintiff has a history of back pain that radiates down her right side.  See T. at 1127.  She underwent lumbar spinal surgery in 2017, but continued to experience pain, particularly after a fall in 2018.  See id. at 1191, 1741.  She developed a right foot drop

---

[3] References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

and has been prescribed an ankle foot orthosis ("AFO") brace for her right foot and a cane to improve her gait.

Plaintiff has also been diagnosed with a number of other impairments including asthma, migraines, colitis, psoriatic arthritis, and postural orthostatic tachycardia syndrome ("POTS"), a condition that causes her blood pressure to drop following sudden movements or changes of position.  See T. at 87-90, 557, 1702-1704, 1741, 1835.  Plaintiff reported that concerns about her physical impairments and related treatment contributed to her diagnosed anxiety and depression.  See id. 1388, 1899-1901.

## B.  Procedural Background

On September 5, 2018, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act, each alleging a disability onset date of June 23, 2018.  See T. at 270-276.  Her applications were initially denied on January 18, 2019, and plaintiff's request for reconsideration was denied on June 3, 2019.  See id. at 189-193, 199-214.  Plaintiff's June 18, 2019, request for a hearing was granted.  See id. at 215-250.  Plaintiff appeared at her February 12, 2020, hearing with counsel and testified before Administrative Law Judge ("ALJ") Kenneth Theurer.  See id. at 69-114. Vocational Expert ("VE") Pat Green also testified.  See id. at 104-114.  On March 11, 2020, the ALJ rendered an unfavorable decision and plaintiff administratively appealed. See T. at 22-43, 267-269.  On January 13, 2021, the Appeals Council denied plaintiff's request for review.  See id. at 1-6.  Plaintiff timely commenced this action on March 3, 2021.  See Compl.

### C.  The Parties' Arguments

In support of reversal, plaintiff argues that the Commissioner's RFC determination is not supported by substantial evidence.  See Dkt. No. 11.  Specifically, plaintiff contends that the Commissioner committed reversible error by (1) failing to properly evaluate the medical opinion evidence and plaintiff's lengthy treatment record, (2) failing to make specific findings regarding time off task and absenteeism, and (3) failing to properly evaluate plaintiff's testimony regarding her functional limitations and side effects from her medications.  See id. at 11-14.  Conversely, the Commissioner argues that the ALJ's evaluation of the medical opinion evidence, plaintiff's testimony, and the overall record of plaintiff's treatment history and activities of daily living was supported by substantial evidence.  See Dkt. No. 17.

## II.  Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

## C.  ALJ's Decision

In his March 11, 2020, decision, the ALJ first determined that plaintiff met the insured status requirements through December 31, 2023.  See T. at 27.  Applying the five-step disability sequential evaluation, the ALJ next determined that plaintiff had not engaged in substantial gainful activity since June 23, 2018, the alleged onset date.  See id.  The ALJ found at step two of the sequential evaluation that plaintiff had the following severe impairments: "post laminectomy syndrome, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, Ehler-Danlos syndrome[4], psoriatic arthritis, migraines, asthma and obesity."  Id. at 27-30.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See T. at 30-31.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work.  See id. at 31-35.

---

[4] "EDS is a group of disorders that affect connective tissues supporting the skin, bones, blood vessels, and many other organs and tissues."  Drabczyk v. Comm'r of Soc. Sec., No. 18-CV-355 (FPG), 2020 WL 4390701, at *2, n.5 (W.D.N.Y. July 31, 2020) (citing https://ghr.nlm.nih.gov/condition/ehlers-danlos-syndrome).  "The syndrome is associated with unusually loose unstable joints that are prone to dislocation and chronic pain, abnormal scarring, highly stretchy and fragile skin, bleeding caused by unpredictable tearing of blood vessels and organs, and problems with the movement of blood and breathing."  Id.

At step four, the ALJ determined that plaintiff is unable to perform her past relevant work.  See id. at 35.  Considering plaintiff's RFC, age, education, and work experience, along with the VE testimony, the ALJ determined that plaintiff can perform other jobs that exist in significant numbers in the national economy, including ticket checker, addressor, and stuffer.  See id. at 35-36.  Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from June 23, 2018, through the date of this decision."  Id. at 36-37.

### D.  Relevant Medical Opinion Evidence

### 1.  Elke Lorensen, M.D.

On December 19, 2018, Dr. Lorensen performed a physical consultative examination of plaintiff.  See T. at 1127-1132.  Prior to the examination, plaintiff reported that her primary complaint is back pain that radiates into her right leg.  See id. at 1127.  She also described her drop foot that required the use of an AFO brace and cane, and her POTS that caused her to become dizzy with rapid changes in body position.  See id.

During the examination, Dr. Lorensen observed that plaintiff appeared in no acute distress but had an abnormal gait both with and without assistive devices.  See T. at 1129.  When she was not wearing her AFO and walking without a cane, plaintiff had moderate favoring of her left leg and dragged her right leg and right foot due to the right foot drop.  See id.  When wearing the AFO brace and using a cane, plaintiff improved to mild favoring of the left leg and no visible foot drop.  See id. at 1129-1130.  Plaintiff was able to change for the examination, get on and off the examination table, and rise from a chair without difficulty.  See id. at 1130.

Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  See T. at 1130.  Plaintiff's lumbar spine showed reduced flexion, extension, lateral flexion and rotation.  See id.  She had full range of motion in the shoulders, elbows, forearms, and wrists bilaterally.  See id.  Plaintiff demonstrated full strength in the upper extremities and left lower extremity, but reduced strength in her right lower extremity.  See id. at 1131.  She showed intact hand and finger dexterity and full grip strength in both hands.  See id.

Based on this examination, Dr. Lorensen opined that plaintiff had "moderate limitations for standing and ambulating presumably secondary to back pain with radiculopathy and right foot drop."  T. at 1131.  She also opined that plaintiff had moderate limitations for bending, lifting, reaching, and squatting, and should avoid heights, smoke, dust, and other respiratory irritants.  See id.  The ALJ found Dr. Lorensen's opinion to be "somewhat persuasive."  Id. at 34.  The ALJ noted the opinion's general consistency with the overall record, including imaging reports, but discounted its reliability due to Dr. Lorensen's repeated use of the vague term "moderate" to describe plaintiff's limitations.  Id.

### 2.  D. Brauer, M.D.

State agency medical consultant Dr. Brauer reviewed plaintiff's then-current medical records on January 17, 2019, and offered his opinion of plaintiff's functional limitations.  T. at 123-126.  The consulting physician opined that plaintiff can occasionally lift and/or carry up to ten pounds and could frequently lift or carry lesser weight.  See id. at 123.  In Dr. Brauer's opinion, plaintiff could stand and/or walk for a total of two hours during an eight hour workday and required use of a cane.  See id.  Dr.

Brauer further opined that plaintiff could sit for a total of about six hours during the workday, and had no limitations in her ability to push or pull.  See id.

Dr. Brauer limited plaintiff to occasional climbing of ramps or stairs, frequent balancing, and occasional stooping, kneeling, crouching, and crawling.  See id. at 123-24. The consulting physician noted that plaintiff's right foot drop and related use of a cane limited her ability to climb ladders or scaffolds.  See id.  Dr. Brauer recommended that plaintiff avoid concentrated exposure to noise due to her history of migraines and avoid concentrated exposure to fumes, odors, dusts, and gases due to her diagnosed asthma.  See id. at 124-125.  Dr. Brauer further recommended that plaintiff avoid even moderate exposure to workplace hazards such as machinery and heights, due to her right foot drop and use of a cane.  See id. at 125.

Dr. Brauer concluded that the "totality of evidence supports sedentary RFC with postural and environmental limitations."  T. at 126.  In supporting his opinion, Dr. Brauer cited a number of medical records, including those related to plaintiff's 2017 back surgery, physical examinations from April, August, and October 2018, and Dr. Lorensen's December 2018 consultative examination.  See id. at 125-126.  In addition, Dr. Brauer referenced multiple imaging reports and treatment records related to plaintiff's colitis and other gastrointestinal impairments.  See id.

The ALJ found Dr. Brauer's opinion to be persuasive and relied heavily on it in determining plaintiff's RFC.  See T. at 32.  The ALJ noted the opinion's consistency with the broad medical record as cited in the opinion, as well as treatment notes prepared later in 2019.  See id. at 32, 1057, 1372-1373, 1974-1977.  The ALJ's reliance was also premised upon Dr. Brauer's program and professional expertise.  See id. at 32.

### 3.  S. Padmaraju, M.D.

Dr. Padmaraju reviewed plaintiff's then-current medical records as a state agency medical consultant on April 29, 2019, as part of the administrative response to plaintiff's request for reconsideration of her initial denial.  See T. at 160-163.  Dr. Padmaraju opined that plaintiff could occasionally lift up to ten pounds and could frequently lift lesser weight.  See id. at 160.  The consulting physician opined that plaintiff could stand and/or walk for a total of two hours during the workday and could sit for a total of about six hours during the workday.  See id.  Dr. Padmaraju found no limitations with regard to plaintiff's ability to push or pull but noted her use of an AFO brace and cane to address balance issues.  See id.

In the consulting physician's opinion, plaintiff could occasionally climb ramps or stairs, balance, stoop, crouch, and crawl, but could never climb ladders, ropes, or scaffolds.  T. at 161.  Dr. Padmaraju also opined that plaintiff should avoid concentrated exposure to extreme temperatures, wetness, humidity, noise, fumes, odors, dusts, and gases, and avoid all exposure to workplace hazards such as machinery and heights.  Id.  These environmental limitations were based upon plaintiff's diagnosed migraines and asthma, as well as plaintiff's right foot drop and need for a cane.  See id. at 161-162.

In explaining the reasons for this opinion, Dr. Padmaraju cited plaintiff's description of her symptoms, treatment notes including her prior back surgery and multiple follow-up physical examinations, imaging reports, and Dr. Lorensen's consultative examination.  See T. at 162-633.  Like Dr. Brauer, Dr. Padmaraju found the "totality of evidence supports sedentary RFC with postural and environmental limitations."  Id. at 163.  Applying the same analysis that he applied to Dr. Brauer's

opinion, the ALJ found this more recent state agency consulting opinion to be

persuasive, in light of its consistency with the medical record, including subsequent

treatment notes, and the physician's programmatic and subject matter expertise.  See

id. at 32.

### 4.  Jack D. Rush, M.D.

Dr. Rush is plaintiff's primary care physician, and plaintiff has treated with

him or others in his practice since November 2013.  See T. at 1157.  Dr. Rush prepared

an opinion regarding plaintiff's physical RFC dated February 15, 2019.  See id. at 1335-

1342.  He opined that plaintiff could "briefly" lift up to five pounds, but never lift any

greater weight due to back pain.  Id. at 1336.  He also opined that plaintiff could stand

for a total of less than two hours during an eight-hour workday and required a four prong

cane.  See id.  Dr. Rush did not specify a length of time that plaintiff could sit but opined

that she must periodically alternate between sitting and standing to relieve pain or

discomfort.  See id.  He further opined that plaintiff's use of her right foot is limited, but

she was able drive short distances.  See id.

With regard to postural limitations, Dr. Rush opined that plaintiff could

occasionally climb ramps or stairs, but could never balance, stoop, kneel, crouch, or

crawl.  See T. at 1337.  He also opined that plaintiff's joint pain limited her ability to

reach in all directions and perform gross and fine manipulation.  See id. at 1338.  In

addition, Dr. Rush opined plaintiff should avoid concentrated exposure to humidity,

noise, and vibration, should avoid even moderate exposure to fumes, odors, dusts, and

gases, and should avoid all exposure to extreme temperatures.  See id. at 1339.  The

ALJ found Dr. Rush's opinion to be "less persuasive" due to a lack of support in the

medical record, and conflict with the opinions of Dr. Lorensen, Dr, Brauer and Dr. Padmaraju.  T. at 34.

### 5.  Sara Gosselin, M.D.

Dr. Gosselin issued two medical opinions related to plaintiff's colitis that are included in the record.  See T. at 1613-1617, 1887-1892.  Plaintiff had been receiving treatment for her colitis since 2016.  See id. at 1120-21.  Dr. Gosselin's first opinion, dated August 6, 2019, set out Dr. Gosselin's opinion that plaintiff's colitis was manageable with medication, but plaintiff still required additional breaks every one to two hours during the workday to use the restroom.  See id. at 1613, 1615.  She also opined that plaintiff should have ready access to the restroom during the workday.  See id. at 1617.  Given the narrow focus of her treatment relationship, Dr. Gosselin did not offer an opinion regarding plaintiff's other functional limitations such as sitting and standing.  See id. at 1616.  In another opinion dated January 31, 2020, Dr. Gosselin offered a similar view of the limitations imposed by plaintiff's mild colitis and again excluded any discussion of  exertional or postural limitations.  See id. at 1887-1892.  She noted that plaintiff's chronic condition had been stable with medication and a gluten free diet, but that plaintiff would still require breaks every one to two hours, and required access to a restroom during the workday.  See id. at 1890, 1892.  Otherwise, Dr. Gosselin opined that plaintiff's gastrointestinal impairment "doesn't prevent patient from working."  Id. at 1892.

The ALJ found these opinions to be somewhat persuasive, concluding that the description of mild colitis was generally consistent with the overall record.  See T. at 34, 1120-1121.  Given the mild nature of the impairment, the ALJ did not impose any

specific limitations regarding additional breaks or more than ordinary restroom access as part of the RFC determination.[5]  See id.

### 6.  Warren Wulff, M.D.

Dr. Wulff examined plaintiff in connection with the installation of a spinal cord stimulator in September 2019.  See T. at 1654-1660.  Prior to the surgery, Dr. Wulff opined on September 18, 2019 that plaintiff's "percentage of temporary impairment is 75%."  Id. at 1658.  He further opined that plaintiff could work with a ten-pound weight lifting restriction, but could not bend, twist, kneel or climb.  See id.  He also opined that plaintiff could sit and stand "as tolerated."  Id.

The ALJ deemed Dr. Wulff's opinion to be "somewhat persuasive."  T. at 34.  He found record support for the lifting limitation, but no support for a complete prohibition on bending, twisting, kneeling or climbing.  See id.  Similarly, the ALJ considered Dr. Wulff's opinion that plaintiff could sit or stand as tolerated but found no record evidence that plaintiff required the ability to change positions from sitting and standing at will. See id.

### 7.  Dante Alexander, Psy.D.

Dr. Alexander performed a consultative psychiatric evaluation of plaintiff on May 22, 2019.  See T. at 1608-1611.  During the examination, Dr. Alexander observed that plaintiff demonstrated a cooperative demeanor and an adequate manner of relating, with appropriate eye contact and normal motor behavior.  See id. at 1609.  She exhibited a coherent and goal-directed thought process with intact attention and

---

[5] Sedentary work typically allows a morning break, lunch break, and an afternoon break at approximately two-hour intervals.  See Natasha D. v. Comm'r of Soc. Sec., No. 3:19-CV-515 (ATB), 2020 WL 1862966, at *9 (N.D.N.Y. April 13, 2020) (citations omitted).

concentration.  See id.  Dr. Alexander observed "mildly impaired" memory skills that he attributed to nervousness during the examination.  Id. at 1610.

Based on this examination, Dr. Alexander opined that plaintiff showed no evidence of limitation in her abilities to understand, remember, and apply simple or complex directions and instructions.  See T. at 1610.  He found no evidence of limitations using reason and judgment to perform work-related decisions, and no evidence of any limitations interacting adequately with supervisors, coworkers, and the public.  See id.  Dr. Alexander opined that plaintiff had a mild limitation sustaining concentration and performing a task at a consistent pace, and a mild limitation in regulating her emotions, controlling behavior, and maintaining well-being.  See id.  In Dr. Alexander's opinion, plaintiff's mental health impairments did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  Id. The ALJ found Dr. Alexander's opinion to be persuasive, in light of its consistency with his own examination of plaintiff as well as the overall mental health treatment record. See T. at 32, 1390-1391, 1608-1611, 1899-1901.

### 8.  T. Inman-Dundon, Ph.D.

State agency psychiatric consultant Dr. Inman-Dundon reviewed plaintiff's then-current medical records on May 28, 2019, and offered his opinion of plaintiff's functional limitations.  See T. at 157-158.  The consultant found no limitations in plaintiff's ability to understand, remember, or apply information, and no limitations with regard to her ability to interact with others.  See id. at 157.  Dr. Inman-Dundon opined that plaintiff had mild limitations in her ability to concentrate, persist, or maintain pace, and mild limitations in her ability to adapt or manage herself.  See id.

Citing psychiatric treatment notes, Dr. Inman-Dundon noted that plaintiff's physical impairments often caused her anxiety and depression, and that plaintiff had been prescribed medication to manage these symptoms.  See T. at 157-158.  Based upon those medical records and a finding of no more than mild mental functional limitations, Dr. Inman-Dundon opined that plaintiff did not have any severe mental impairments. See id. at 158.

The ALJ found Dr. Inman-Dundon's opinion to be persuasive, and relied upon it at step two and the RFC determination.  See T. at 29-30, 32.  The ALJ explained that this reliance was based upon the opinion's consistency with plaintiff's limited mental health treatment records, plaintiff's activities of daily living, and Dr. Inman-Dundon's programmatic and professional expertise.  See id. at 32.

### 9.  Elizabeth Davis, LCSW

Ms. Davis, a licensed clinical social worker who provided mental health counseling to plaintiff since October 2018, prepared an opinion regarding plaintiff's mental RFC on August 23, 2019.  See T. at 1880-1882, 1895-1901.  Ms. Davis opined that plaintiff had no limitations understanding, remembering, and carrying out simple instructions, and mild limitations in her ability to make judgments on simple work-related decisions.  See id. at 1880.  She further opined that plaintiff had extreme limitations in her ability to understand, remember, and carry out complex instructions, and in her ability to make judgments on complex work-related decisions.  See id.  She also opined that plaintiff had moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  See id. at 1881.

16

Although Ms. Davis had provided mental health counseling to plaintiff, she ascribed these limitations to plaintiff's physical pain, and the resulting limitations in her ability to move and sit.  See T. at 1880.  The ALJ deemed Ms. Davis' opinion to be "less persuasive," partly because Ms. Davis' discussion of plaintiff's pain is outside her area of professional expertise.  Id. at 35.  The ALJ also noted the contrast between Ms. Davis' opinion and the generally normal and stable mental health treatment notes in the record.  See id. at 1390-1391, 1899-1901.

### III.  Legal Analysis

### A.  RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both

examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks and citation omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is "not required to articulate how [he or she] considered evidence" is from nonmedical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The regulations define sedentary work as work that

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

See, e.g., 20 C.F.R. § 416.967(a). In determining that plaintiff had the RFC to perform less than the full range of sedentary work, the ALJ found that plaintiff could:

lift/carry ten pounds; sit for approximately six hours in an eight-hour workday; and stand or walk for approximately two hours in an eight-hour workday.  The claimant can never climb ladders/ropes/scaffolds, but she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl.  The claimant can perform no more than frequent reaching, handling, fingering and feeling.  She should avoid work at unprotected heights or in conjunction with dangerous machinery.  She should avoid concentrated exposure to smoke, dust and respiratory irritants.  She should avoid temperature extremes and concentrated exposure to wetness and humidity.  The claimant requires the use of a cane to ambulate; however, she retains the ability to carry a small object such as a file or ledger in her free hand.

T. at 31-35.

## B. Evaluation of Medical Opinion Evidence

Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability and consistency, the author's relationship with the claimant and specialization, and "other factors."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  Id. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for all of the medical opinions in the record.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from

19

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

"If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).  The ALJ is generally "not required to, explain how [he or she] considered the" remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," he or she "will articulate how [he or she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions. . . ." Id. §§ 404.1520c(b)(3), 416.920c(b)(3).

### C. The Commissioner's RFC Determination and Evaluation of the Medical Opinion Evidence Were Supported by Substantial Evidence.

#### 1. The ALJ Properly Evaluated the Medical Opinion Evidence.

Summarizing his analysis of the medical opinion evidence, the ALJ stated that his RFC determination "is based on the opinions of D.Brauer, M.D., S. Padmaraju, M.D., T. Inman-Dundon, Ph.D., and Dante Alexander, Psy.D., and these opinions are all persuasive."  T. at 32.  In challenging the ALJ's decision to rely on the opinions from examining and non-examining consultants over the opinions of treating sources, plaintiff notes that the administrative record "contains 1,595 pages of medical records, most of

20

which were added after the reviews of Dr. Brauer and Dr. Padmaraju and the consultative examination of Dr. Alexander." Dkt. No. 11 at 14.

In essence, plaintiff avers that the ALJ's reliance on the consultative opinions was misplaced, where treating source opinions and their presumably greater familiarity with plaintiff's lengthy medical history were available. However, "[a]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." Gamble v. Comm'r of Soc. Sec., No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), adopted by 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016); see also Jacqueline L. v. Comm'r of Soc. Sec., No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021) ("[T]he new regulations eliminate the "treating physician rule," and the opinion of a consultative examiner may override the opinion of a treating physician, particularly where the opinion of the consultative examiner is better supported by the record."). Likewise, "[i]t is well settled that, under both the old and the new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims." Amber H v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, *5 (N.D.N.Y. 2021) (citations omitted) (explaining under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content).

The Brauer, Padmaraju, and Inman-Dundon opinions include a summary of the records most relevant to their respective conclusions, and Dr. Alexander's report

included a summary of his examination findings.  See T. at 125-126, 157-158, 162-63, 1609-1610.  In contrast, none of the treating source opinions provide significant narrative explanation.  See id. at 1336-1341, 1613-1617, 1658, 1880-81, 1887-1892. The Second Circuit has recently clarified that an opinion by a treating provider should not be discounted solely because it is provided on a check-box form.  Colgan v. Kijakazi, 22 F.4th 353, 360-61 (2d Cir. 2022) ("Needless to say, *Halloran* did not then and does not now stand for the rule that the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form.").  Rather, if the opinion is substantiated by clinical findings and other evidence in the record, the format of the opinion should not affect the weight to be given.  See id. at 361 ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert . . . .").

Following that approach, the ALJ did not rely solely on the form of the treating source opinions but conducted an appropriate evaluation of all available medical opinions from treating and non-treating sources for consistency and supportability with the overall record.  For example, the ALJ cited numerous imaging reports and treatment records that set out physician evaluations of plaintiff's spinal impairments, her response to surgery, and the general impact on plaintiff's gait and strength.  See T. at 33, 420, 423, 1058, 1143-1146, 1974-1975.  The ALJ provided a similar overview of plaintiff's mental status examinations.  See id. at 33-35, 1145, 1372, 1380-1381.  During the RFC

analysis, the ALJ applied the same consideration to the functional limitations imposed by plaintiff's Ehler-Danlos syndrome, migraines, asthma, and gastrointestinal impairments.  See id. at 33-34, 1100-1102, 1143-1145, 1173-1174, 1841-1850.  Taking all these records into account, the ALJ marshalled substantial evidence to support his evaluation of the medical opinion evidence and the RFC determination.[6]

Although plaintiff argues that many treatment notes postdate the consultative opinions, she has provided no evidence that any of the consultative opinions were made stale by subsequent medical records.  See Maxwell H. v. Comm'r of Soc. Sec., No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (A consultative "opinion may become stale 'if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.'") (quoting Clute ex rel. McGuire v. Comm'r of Soc. Sec., No. 18-CV-30, 2018 WL 6715361, at *5 (W.D.N.Y. Dec. 21, 2018)).  Likewise, although plaintiff makes repeated general references to the large number of medical records, she does not identify any records that contradict the ALJ's analysis of the medical opinion evidence or the resulting RFC determination.

Even if some contradictions had been identified, that alone would not entitle plaintiff to remand.  See Veino, 312 F.3d at 588  ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).  Moreover, the ALJ explicitly discussed the subsequently submitted records in his decision.  See T. at 27-35; see also Laura Anne H. v. Saul, No. 6:20-CV-397

---

[6] Plaintiff does not challenge the ALJ's consideration of the required factors, such as supportability or consistency, as they relate to any of the medical opinions.  See generally Dkt. no. 11.

(TWD), 2021 WL 4440345, at *6 (N.D.N.Y. Sept. 28, 2021) (explaining that remand was not warranted where the plaintiff argued that the ALJ relied on an allegedly stale opinion because "subsequently submitted evidence did not directly contradict [the examiner's] opined limitations and the ALJ analyzed the more recent evidence of [the p]laintiff's allegations of pain, treatment notes, imaging, and subsequent procedures.").  As there is no evidence that plaintiff's conditions deteriorated subsequent to the consultants' determinations, an ALJ is entitled to rely on consulting determinations, and the ALJ discussed the subsequently submitted evidence, remand is not warranted on this ground.

### 2.  The ALJ's Exclusion of Specific Limitations Related to Time Off Task and Absenteeism Was Supported by Substantial Evidence.

Plaintiff argues that the ALJ committed reversible error by failing to make specific findings regarding her ability to remain on task and maintain regular attendance required for full-time employment, in light of the evidence regarding plaintiff's numerous medical appointments that will cause her to miss work.  See Dkt. No. 11 at 12-13.  Plaintiff's bare contention that the frequency of her medical appointments prevents her from maintaining full-time work, without more, does not justify remand.  See, e.g., Theresa G. v. Saul, No. 5:20-CV-362 (DJS), 2021 WL 1535472, at *4 (N.D.N.Y. Apr. 19, 2021), reconsideration denied, 2021 WL 2282024 (N.D.N.Y. June 4, 2021) ("[The p]laintiff fails to establish that her medical treatment could not have been scheduled to accommodate a typical work schedule . . . ."); Ann C. v. Comm'r of Soc. Sec., No. 18-CV-1291 (FPG), 2021 WL 492113, at *5 (W.D.N.Y. February 10, 2021) ("[The p]laintiff, however, fails to cite any evidence that her appointments would have required her to miss an entire day of work. As the Commissioner notes and other courts have recognized in rejecting similar

24

arguments, it is possible that such appointments could have been completed during non-work hours.").  Indeed, in discussing one of her teaching positions, plaintiff testified that her schedule allowed her to attend doctor's appointments without taking the entire day off.  See T. at 92-93.[7]

The ALJ did not make explicit findings regarding time off task or absenteeism limitations.  See T. at 31-35.  This is despite Dr. Gosselin's opinion that because of plaintiff's colitis, plaintiff would need a five-to-ten-minute break every one-to-two hours, and she would require access to a restroom.  See id. at 34, 1615, 1617.  However, plaintiff does not challenge the ALJ's consideration of Dr. Gosselin's opinion or the ALJ's failure to explicitly discuss and include Dr. Gosselin's opined bathroom limitations in plaintiff's RFC.  See id.; cf. Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *6, n.2 (N.D.N.Y. June 9, 2021) ("[The p]laintiff does not advance any argument as to why the ALJ was required to explicitly consider the frequency, purpose, extent, and examining relationship between the consultative examiners and himself despite the regulations explicitly stating that the ALJ had no such duty.  The Court declines to advance any arguments on [the p]laintiff's behalf, who is represented by counsel, and will consider this argument waived.").  Additionally, plaintiff's colitis was discussed by the ALJ and documented to be controlled with medication, diet and other treatment such that the ALJ found it to be a non-severe impairment.  See T. at 29, 112, 1091-1092, 1094.  Plaintiff does not challenge the ALJ's severity determination.  See generally Dkt. No. 11.  Accordingly, the Court does not find reversible error in the ALJ's decision as it relates to time off task or absenteeism limitations.

---

[7] At the administrative hearing, VE Green testified that typical employer tolerance for time off task is ten percent of the workday.  T. at 112.

**3.    The ALJ's Evaluation of Plaintiff's Testimony Regarding Pain and Medication Side Effects Was Supported by Substantial Evidence.**

In evaluating a plaintiff's subjective complaints of pain and other limitations, the ALJ is required to consider, in part, "type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms[.]"  20 C.F.R. § 416.929(c)(3)(iv).   Plaintiff does not identify a medical opinion or treatment record that reflected side effects from her medications.  See T. at 1335-42, 1608, 1614, 1654-64, 1888.  The ALJ also considered plaintiff's testimony regarding her symptoms and functional limitations.  See T. at 32-33.  Plaintiff testified that she had to frequently lie down due to low blood pressure and resulting dizziness, and that she became so "run down" that she typically remained in bed for several days after working one five-hour shift at her part time job.  Id. at 94.  The ALJ asked whether plaintiff has "any side effects from any of [her] medications[.]"  Id. at 96.  Describing a prescription regimen that included steroids, nerve block injections, and anxiety medication, plaintiff testified that her medication often made her feel exhausted, although she was unsure if it was a side effect of a particular drug or the combination of medications.  See id. at 87-91, 96-97.

In evaluating plaintiff's testimony, the ALJ recognized that plaintiff suffered from numerous impairments that would impose functional limitations but found no record support for the extreme limitations described in plaintiff's testimony.  See T. at 33.  Specifically, the ALJ also recognized plaintiff's testimony that "she is not very active and has difficulty with normal self-care"; "she is in bed for several days after working the five-hour shift at her part-time job"; "her joints ache, she elevates her feet periodically[,] and she requires the use of a quad-cane"; and "she naps daily, has crying spells, experiences indecision and has difficulty staying on task and remembering things."  Id. at 32-33; cf.

Richard A.D. v. Comm'r of Soc. Sec., No. 1:20-CV-1154 (DNH/DEP), 2022 WL 508744, at *6 (N.D.N.Y. Feb. 2, 2022), report and recommendation adopted, 2022 WL 507346 (N.D.N.Y. Feb. 18, 2022) ("Although there is certainly not any clear objective medical evidence to support plaintiff's allegations of side effects, the ALJ's complete failure to acknowledge plaintiff's reports or to reconcile the portions of the record that were unclear as identified above suggests error in that it is not clear that the ALJ appropriately considered plaintiff's reports of side effects that impact his work-related functioning.").

Moreover, as discussed, multiple physicians recognized an improvement in plaintiff's gait and balance with the use of an AFO and cane, and the ALJ included such accommodations in the RFC determination and the hypothetical to the VE. See T. at 31, 33, 108, 1057. The ALJ cited reports that the many of the symptoms associated with plaintiff's colitis, POTS, asthma, and anxiety were well-managed with medication and other treatment. See id. at 32-34, 1091-1094, 1120, 1143. Such analysis was appropriate and provided substantial evidence for the ALJ's assessment of plaintiff's testimony. See Barry v. Colvin, 606 F. App'x 621, 623 (2d Cir. 2015) (summary order) (explaining that when evaluating a claimant's testimony, an ALJ must consider "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.") (alterations in original) (citing omitted); see also 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work. . . .  In evaluating the intensity and

persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you.").

In addition, the ALJ's evaluation of plaintiff's testimony included a review of plaintiff's activities of daily living including shopping, painting, using a computer, working part-time, and socializing with family and friends. See T. at 30, 83, 93-94, 319, 1898. The ALJ also considered documented instances of more intensive activity by plaintiff, such as helping plan her sister's wedding. See id. at 34, 1900. The ALJ is entitled to consider plaintiff's activities in this manner as part of the RFC analysis. See Medina v. Comm'r of Soc. Sec., 831 F. App'x 35, 36 (2d Cir. 2020) (summary order) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); Herrington v. Berryhill, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (noting that activities of daily living are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations). Accordingly, the ALJ had substantial evidence to discount portions of plaintiff's testimony.


## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 30, 2022
          Albany, New York


Christian F. Hummel
U.S. Magistrate Judge